UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAG BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>QUANTCAST CORP.,<br><br>    Defendant. | Case No. 19-cv-05773-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; AND STAYING CASE**<br><br>Docket No. 22 |

Plaintiff Tag Brown has filed a putative class and collective action against Defendant Quantcast Corp., his former employer. According to Mr. Brown, "Quantcast is a website analytics company." Compl. ¶ 14. He worked for Quantcast as a sales representative for which he was paid a salary plus commissions. He was deemed exempt from overtime pay. *See* Compl. ¶ 26. Mr. Brown has brought suit because he maintains that Quantcast misclassified him and others similarly situated as exempt from overtime. Mr. Brown has asserted a claim for failure to pay overtime under the federal Fair Labor Standards Act ("FLSA") as well as a claim for violation of California Business & Professions Code § 17200.[1] Since Mr. Tag has filed suit, five other former employees of Quantcast have opted into the FLSA collective action – namely:

- Jalen Ransome, *see* Docket No. 6;
- Tyler Berg, *see* Docket No. 19;
- Sam Awrabi, *see* Docket No. 20;

---

[1] The § 17200 claim is predicated on a violation of the FLSA as well as certain provisions in the California Labor Code. *See* Compl. ¶ 76 (listing California Labor Code §§ 510 (overtime), 1194 (minimum wage and overtime), 226.7 (meal and rest break), and 512 (meal break)).

- Andrea Primer, *see* Docket No. 20; and
- Pierce McManus. *See* Docket No. 21.

Quantcast now moves to compel arbitration with respect to Mr. Brown and each of the five other former employees.

## I.     FACTUAL & PROCEDURAL BACKGROUND

Quantcast argues that arbitration must be compelled because each individual has an offer-of-employment letter that contains an arbitration provision. According to Quantcast, some of the individuals are also subject to arbitration based on provisions in their sales commission plans and severance agreements. For purposes of the pending motion, the Court need only consider the offer letters. There are two different offer letters that cover the six individuals. The parties have referred to them as the first and second offer letters, respectively, and the Court shall do the same. Mr. Brown and Mr. Berg received the first offer letter. *See* Schwartz Decl., Exs. A, E. Ms. Primer, Mr. Ransome, Mr. Awrabi, and Mr. McManus received the second offer letter. *See* Schwartz Decl., Exs. H, J, K, M.

## II.     DISCUSSION

A.    Legal Standard

Quantcast asserts, and Plaintiffs do not dispute, that the Federal Arbitration Act ("FAA") governs the instant case. The FAA provides in relevant part that

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Grounds that exist to support the revocation of an arbitration agreement include no contract formation and contract invalidity, *see generally Eiess v. USAA Fed. Sav. Bank*, No. 19-cv-00108-EMC, 2019 U.S. Dist. LEXIS 144026 (N.D. Cal. Aug. 23, 2019) (discussing both contract formation and contract validity) – that is, so long as those defenses do not "apply only to

2

arbitration or . . . derive their meaning from the fact that an agreement to arbitrate is at issue." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015) (internal quotation marks omitted). A party may also argue that an arbitration clause in a concededly binding contract does not "'appl[y] to a given controversy.'" *Id.*

B. First Offer Letter (Mr. Brown and Mr. Berg)

Both Mr. Brown and Mr. Berg received the first offer letter which contained the following arbitration provision:

> To ensure rapid and economical resolution of any disputes which may arise under this letter agreement, you agree that any and all disputes or controversies, whether of law or fact of any nature whatsoever (including, but not limited to, all state and federal statutory and discrimination claims, with the sole exception of those disputes which may arise from your confidentiality agreement) arising from or regarding the interpretation, performance, enforcement or breach of this letter agreement shall be resolved by final and binding arbitration under the Judicial Arbitration and Mediation Services Comprehensive Arbitration Rules and Procedures.

Schwartz Decl., Exs. A, E.

Mr. Brown and Mr. Berg challenge the first offer letter on three grounds: (1) the arbitration provision does not cover the claims at issue; (2) there was no "meeting of the minds" regarding arbitration; and (3) the arbitration provision is unconscionable and severance cannot save it.

1. Scope of the Arbitration Provision

Mr. Brown and Mr. Berg argue first that the arbitration provision does not apply to their claims because their claims do not arise under the employment agreement but rather are based on statutes. *See Elijahjuan v. Superior Court*, 210 Cal. App. 4th 15, 20-21 (2012) (noting that a Ninth Circuit case, *Narayan v. EGL, Inc.*, 616 F.3d 895 (9th Cir. 2010), "explains the distinction between rights arising under a contract and those arising under a Labor Code statute"; "[a]lthough *Narayan* involved a choice of law provision, its reasoning is applicable here"). The problem with this argument is that it reads out critical language in the arbitration provision. The provision does not state that it covers claims arising from or regarding the employment agreement; rather, the provision states that it covers claims arising from or regarding (*inter alia*) *performance* of the employment agreement. Mr. Brown and Mr. Berg's overtime claims do arise from or regard

3

*performance* of the employment agreement which classifies and treats Mr. Brown and Mr. Berg as exempt from overtime pay.

2. <u>Meeting of the Minds</u>

Mr. Brown and Mr. Berg argue that, even if their claims fall within the scope of the arbitration provision, the arbitration provision is not enforceable because there was no "meeting of the minds" with respect to the provision. This is essentially a contract formation issue. They contend that, at the time they signed the first offer letter, they also signed a sales commission plan, which also contains an arbitration provision. The arbitration provision in the sales commission plan states as follows:

> Quantcast and Seller agree to submit to mandatory binding arbitration any and all claims arising out of or related to Seller's commission under this plan. Seller may bring an administrative claim before any government agency where, as a matter of law, the parties may not restrict Seller's ability to file such claims. However, to the fullest extended permitted under applicable law (including but not limited to the federal Arbitration Act), Seller agrees that arbitration shall be the exclusive remedy for his or her individual claims that are the subject of such administrative complaints. The arbitration shall be conducted in San Francisco, CA, before a single neutral arbitration from the American Arbitration Association ("AAA") and be governed by the AAA Rules and Procedures.

Schwartz Decl., Exs. A, E (Sales Commission Plan ¶ 14) (emphasis added).

Mr. Brown and Mr. Berg contend that there was no meeting of the minds regarding arbitration because the sales commission plan refers to use of the AAA rules whereas, as indicated above, the first offer letter refers to use of the JAMS rules: "The refusal to identify one controlling agreement makes it impossible to know what agreement to enforce." Opp'n at 8. Mr. Brown and Mr. Berg add: "The AAA [itself] has multiple arbitration rules" and, because the sales commission plan "does not clearly identify one set of applicable rules, [this] lead[s] to further uncertainty." Opp'n at 8 n.4; *see also* https://www.adr.org/Rules (last visited 11/15/2019) (listing arbitration rules for commercial, construction, consumer, employment, labor, international dispute resolution, and optional appellate).

Mr. Brown and Mr. Berg's argument is meritless. As Quantcast points out, it was reasonable to have Mr. Brown and Mr. Berg enter into two arbitration agreements at the same

4

1  time: "The Sales Commission Plan could reasonably be interpreted to govern disputes concerning
2  Plaintiffs' commission payments, whereas the Offer Letter relates to broader employment
3  disputes, like the classification claims alleged in this case." Reply at 8 (adding that doubts as to
4  interpretation should be resolved in favor of arbitration).

The Court also notes that, even though the first offer letter and sales commission plan do reference different arbitration rules, Mr. Brown and Mr. Berg have not pointed to any specific conflict between the rules. The main case on which Mr. Brown and Mr. Berg rely is distinguishable precisely because, there, the plaintiffs pointed to specific inconsistencies. *See Ragab v. Howard*, No. 15-cv-00220-WYD-MJW, 2015 U.S. Dist. LEXIS 148301, at *14 (D. Colo. Nov. 2, 2015) (noting that the plaintiff "identified 74 independent ways in which the six arbitration clauses are not only ambiguous in relation to one another but also inconsistent"; one way was related to the rules governing arbitration). Furthermore, other cases cited by Mr. Brown and Mr. Berg suggest that not every kind of conflict between arbitration provisions precludes a contract. *See, e.g.*, *Arevalo Tortilleria, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 694 F. App'x 614, 615 (9th Cir. 2017) (concluding that "[t]he district court did not err in holding that the arbitration agreements were not inconsistent[;] [a]lthough the RPA and the Request to Bind provide for arbitration in different locations, the parties indisputably intended that disputes related to the RPA be submitted to arbitration, and the arbitrators can reconcile any dispute about venue").

Finally, to the extent Mr. Brown and Mr. Berg argue that there is uncertainty because the AAA has multiple sets of rules, that is true but, similar to above, they have not pointed to any specific inconsistencies among those rules.

3. Unconscionability

Mr. Brown and Mr. Berg contend that, even if the arbitration provision in the first offer letter covers their wage-and-hour claims, and even if there was a meeting of the minds on arbitration, the arbitration provision still should not be given effect because it is unconscionable and severance cannot save it.

Under California law on contracts, unconscionability has two elements: procedural and

5

1  substantive. *See Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 624 (N.D. Cal. 2019).

> "A sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." A court when evaluating procedural aspects of unconscionability focuses on oppression or surprise that results from unequal bargaining power, and while determining substantive unconscionability a court is more concerned with overly harsh or one-sided results.

*Id.*

### a. Procedural Unconscionability

With respect to procedural unconscionability, there is no indication that Mr. Brown and Mr. Berg could opt out of the arbitration requirement or negotiate on the issue of arbitration with Quantcast. Thus, there is some procedural unconscionability in the instant case. As this Court has recognized, "'few employees are in a position to refuse a job because of an arbitration requirement,' and thus an employment contract of adhesion is procedurally unconscionable." *Id.* at 625.

This Court has also noted, however, that "'[w]here there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Id.* at 626. Here, Mr. Brown and Mr. Berg argue that there is at least one other indication of oppression or surprise here because there were arbitration provisions in both the first offer letter and the sales commission plan. However, as indicated above, this argument is not persuasive. Hence, the degree of procedural unconscionability is minimal.

### b. Substantive Unconscionability

As for substantive unconscionability, as noted above, the arbitration provision in the first offer letter states as follows:

> To ensure rapid and economical resolution of any disputes which may arise under this letter agreement, **you agree** that any and all disputes or controversies, whether of law or fact of any nature whatsoever (including, but not limited to, all state and federal statutory and discrimination claims, with the sole **exception** of those disputes which may arise from your confidentiality agreement) arising from or regarding the interpretation, performance,

6

> enforcement or breach of this letter agreement shall be resolved by final and binding arbitration under the **Judicial Arbitration and Mediation Services Comprehensive Arbitration Rules and Procedures**.

Schwartz Decl., Exs. A, E (emphasis added). The bolded language above points to where Mr. Brown and Mr. Berg claim substantive unconscionability.

### i. Lack of Mutuality: "You Agree"

First, Mr. Brown and Mr. Berg assert substantive unconscionability because only they were required to arbitrate ("you agree"), and not Quantcast. As Quantcast points out, however, there are cases holding that there is mutuality between the parties in spite of similar language in an arbitration provision such as "I agree." For example, in *Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009), the court stated that "we simply do not believe . . . the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement." *Id.* at 1473. It added that, even if there were some ambiguity, "given the public policy favoring arbitration and the requirement we interpret the provision in a manner that renders it legal rather than void, we would necessarily construe the arbitration agreement as imposing a valid, mutual obligation to arbitrate." *Id. Roman* strongly supports Quantcast.

Moreover, in the instant case, it is clear that the "you agree" language was meant to apply to both the employee and Quantcast (and not just the employee) because the arbitration provision contains an exception to arbitration for disputes that arise from the confidentiality agreement. As discussed below, this "carve-out" was clearly intended to benefit Quantcast. The "you agree" language does not prevent the arbitration clause from applying to Quantcast; otherwise, the carve-out from arbitration makes no sense.

### ii. Lack of Mutuality: Exception to Arbitration

Second, Mr. Brown and Mr. Berg claim substantive unconscionability based on the carve-out from arbitration. Quantcast protests that the carve-out "is mutual, as it applies to claims brought by either Quantcast or Plaintiffs." Reply at 12; *see also Pereyra v. Guaranteed Rate, Inc.*, No. 18-cv-06669-EMC, 2019 U.S. Dist. LEXIS 108940, at *17 (N.D. Cal. June 28, 2019) (noting that there is lack of mutuality if one contracting party, but not the other, is required to arbitrate all claims arising out of the same transaction or occurrence). Presumably, what Quantcast means here

7

1 is that, even though the confidentiality agreement imposes obligations only on the employee and

2 not Quantcast itself (*e.g.*, not to disclose proprietary information of Quantcast), where there is a

3 dispute that arises from the confidentiality agreement, *either* Quantcast or the employee could get

4 that dispute in front of a court.[2] This Court, however, has noted that

> one-sided rights affording a broad exemption from arbitration and likely to benefit one party over the other by affording that party a choice of forum may be unconscionable. For instance, in *Farrar* the court found unconscionable an agreement which contained a "wholesale exception" to arbitration exempting "any claim based on or related to the . . . Assignment of Inventions & Confidentiality Agreement between you and Direct Commerce."

*Id.* at *18; *see also Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1273 (2017) (stating that, "[w]hile a contract can provide a margin of safety that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable, several courts have concluded a complete carve-out for confidentiality-related claims results in unfair one-sidedness") (internal quotation marks omitted); *Fitz*, 118 Cal. App. 4th at 725 (stating that "[t]he ACT policy is unfairly one-sided because it compels arbitration of the claims more likely to be brought by Fitz, the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by NCR, the stronger party"); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176 (2002) (noting that "the agreement specifically excludes 'claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information'" and therefore "exempts from arbitration the claims Countrywide is most likely to bring against its employees").[3] Here, there is little doubt that the carve-out related

---

[2] Quantcast does not argue that business realities create a special need for the carve-out. *See Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 723 (2004) (stating that "a contracting party with superior bargaining strength may provide extra protection for itself within the terms of the arbitration agreement if business realities create a special need for the advantage[;] [t]he business realities creating the special need, *must be explained in the terms of the contract or factually established*") (emphasis added).

[3] The California Supreme Court's decision in *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016), does not appear to conflict with any of the above cases, including *Pereyra* or *Farrar*, both of which were decided after *Baltazar*. In *Baltazar*, the Supreme Court simply stated that "[n]othing in *Fitz* or *Mercuro* supports the conclusion" that a provision that compels arbitration of all employment-related claims, but that permits both parties to seek injunctive relief as expressly

8

to disputes arising from the confidentiality agreement would likely benefit Quantcast more than any employee. Quantcast conceded as much at the hearing on the motion to compel. The Court thus finds some substantive unconscionability based on the carve-out.

### iii. Fees and Costs

Finally, Mr. Brown and Mr. Berg assert substantive unconscionability because the arbitration provision specifies that JAMS Comprehensive Arbitration Rules and Procedures shall apply and these rules would require him to pay fees and costs that he would not have to pay if he was able to litigate his case in court instead. Mr. Brown and Mr. Berg point to Comprehensive Rule No. 31 in particular which provides as follows:

> (a) Each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).
>
> . . . .
>
> (c) The Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-31 (last visited 12/5/2019).

In response, Quantcast asserts that, when JAMS receives an employment case, it generally applies its "Employment Arbitration Minimum Standards of Procedural Fairness," and Minimum Standard No. 6 puts limitations on what an individual must pay:

> Standard No. 6: Costs and Location Must Not Preclude Access to Arbitration
>
> An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration. The only fee that an employee may be required to pay is

---

provided for by California Code of Civil Procedure § 1281.8(b), "is unfairly one-sided merely because one side is, as a practice matter, more likely to make use of it." *Id.* at 1250 n.4. *Baltazar* only addresses the statutory issue.

9

> JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services. In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party.

https://www.jamsadr.com/employment-minimum-standards/ (last visited 12/5/2019).

Based on JAMS's website, it appears that the Employment Arbitration Minimum Standards "apply to arbitrations based on pre-dispute agreements that are required as a condition of employment," and "JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards."

https://www.jamsadr.com/employment-minimum-standards/. The problem for Quantcast is that it assumes that the arbitration will in fact go to JAMS, but the first offer letter does not require that the dispute be arbitrated before JAMS specifically. It simply refers to JAMS's Comprehensive Rules as being applicable in the arbitration.

Moreover, the arbitration provision in the first offer letter indicates in no way that any JAMS rules or standards will apply other than the Comprehensive Rules. In this regard, it is noteworthy that JAMS has Employment Arbitration Rules that are separate and distinct from the Comprehensive Rules. *See* https://www.jamsadr.com/rules-employment-arbitration/ (last visited 12/5/2019). Although Quantcast could have incorporated the Employment Arbitration Rules in the first offer letter, it did not, choosing instead to incorporate only the Comprehensive Rules.

Accordingly, the Court also finds some substantive unconscionability because the arbitration provision contemplates that employees will have to pay substantial fees and costs exceeding that which would be paid in a court suit in order to arbitrate.

        c.      <u>Severance</u>

Based on the above, the Court finds a low degree of procedural unconscionability as well as some substantive unconscionability in the first offer letter's arbitration clause. The Court must assess whether the substantively unconscionable provisions in the arbitration clause may be severed such that arbitration would go forward without the substantively unconscionable terms.

In *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000), the California Supreme Court indicated that, "[i]f the central purpose of the contract is tainted with

illegality, then the contract as a whole cannot be enforced," whereas, "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.* at 124.

> In this case, two factors weigh against severance of the unlawful provisions. First, the arbitration agreement contains more than one unlawful provision; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause. Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage. In other words, given the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose.
>
> Second, in the case of the agreement's lack of mutuality, such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms. Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute. Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent limited authority to reform contracts. Because a court is unable to cure this unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation, it must void the entire agreement.

*Id.* at 124-25.

In the instant case, the Court concludes that, although arguably a close call, the substantively unconscionable terms in the first offer letter's arbitration clause do not "indicate a systematic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage." *Id.* at 124. The substantively unconscionable terms here do not have as broad a reach as the substantively unconscionable terms in *Armendariz*. *See id.* at 103-04, 120 (describing provision that limited the damages employees could obtain and provision that required arbitration of only an employee's claim for wrongful termination). The agreement is in nearly all respects mutual. The exception pertains to one aspect of relief which is not an explicitly unilateral carve-out. With respect to the fee provision, there is a plausible though not convincing argument

11

that the fee provision does not encumber employees with excessive arbitration fees. Hence, the agreement is not permeated with unconscionability.

Moreover, severance is possible – *i.e.*, the Court may strike both the term that provides a carve-out from arbitration and the term that provides for application of the JAMS Comprehensive Rules. With the severance of the Comprehensive Rules provision, Mr. Brown and Mr. Berg would not be required to pay arbitration fees and costs. *See id.* at 113 ("[A] mandatory employment arbitration agreement that contains within its scope the arbitration of [statutory employment] claims impliedly obliges the employer to pay all types of costs that are unique to arbitration. . . . The absence of specific provisions on arbitration costs would therefore not be grounds for denying the enforcement of an arbitration agreement.").

4. Conclusion

For the foregoing reasons, the Court holds that the first offer letter's arbitration provision may be enforced, conditioned upon severance of the two substantively unconscionable terms discussed above.[4]

C. Second Offer Letter

Ms. Primer, Mr. Ransome, Mr. Awrabi, and Mr. McManus each received the second offer letter which contained the following arbitration provision:

> To ensure rapid and economical resolution of any disputes which may arise under this letter agreement, you and the Company agree to submit to binding arbitration any and all claims arising out or related to your employment with the Company and the termination thereof, including all claims whether based on contact [sic], statute or otherwise, except that each party may, at its, his or her option, seek injunctive relief in court related to the improper use, disclosure or misappropriation of a party's private, proprietary, confidential or trade secret information (collectively, "Arbitrable Claims"). Further, to the fullest extent permitted by law, you and the Company agree that no class or collective actions can be asserted in arbitration or otherwise. All claims, whether in arbitration or otherwise, must be brought solely in your or the Company's individual capacity, and not as a plaintiff or class member in any purported class or collective proceeding. Nothing in this Arbitration and Class Action

---

[4] The Court also notes that arbitration likely could be compelled based on the sales commission plans for Mr. Brown and Mr. Berg. The overtime claims "relate" to the commissions because Mr. Brown and Mr. Berg are essentially arguing that they should not have been paid a salary plus commissions but rather an hourly wage with overtime.

12

> Waiver section, however, restricts your right, if any, to file in court a representative action under California Labor Code Sections 2698, et seq.
>
> SUBJECT TO THE ABOVE PROVISO, THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS. THE PARTIES FURTHER WAIVE ANY RIGHTS THEY MAY HAVE TO PURSUE OR PARTICIPATE IN A CLASS OR COLLECTIVE ACTION PERTAININGN TO ANY ARBITRABLE CLAIMS BETWEEN YOU AND THE COMPANY.
>
> This Agreement does not restrict your right to file administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict the employee's ability to file such claims. The arbitration shall be conducted in San Francisco County, California through JAMS before a single neutral arbitrator, in accordance with the JAMS employment arbitration rules then in effect. The JAMS rules may be found and reviewed at http://www.jamsadr.com/rules-emploment-arbitration. The arbitrator shall issue a written decision that contains the essential findings and conclusions on which the decision is based.

Schwartz Decl., Exs. H, J, K, M (also providing that the "letter agreement shall be construed and interpreted in accordance with the laws of the State of California").

For this arbitration provision, the relevant Plaintiffs claim unconscionability only. They argue procedural unconscionability because the second offer letter is a contract of adhesion; they argue substantive unconscionability because of lack of mutuality – *i.e.*, based on the exception to arbitration "that each party may, at its, his or her option, seek injunctive relief in court related to the improper use, disclosure or misappropriation of a party's private, proprietary, confidential or trade secret information." Schwartz Decl., Exs. H, J, K, M.

The analysis here is similar to that above with respect to the alleged unconscionability of the first offer letter's arbitration provision – with two exceptions. First, the second offer letter's arbitration provision makes a carve out not for just disputes that arise from the confidentiality agreement, but rather for disputes that "relate[] to the improper use, disclosure or misappropriation of a party's private, proprietary, confidential or trade secret information." Schwartz Decl., Exs. H, J, K, M. This carve-out from arbitration is not so clearly one-sided in favor of Quantcast. While Quantcast would be more likely to bring a claim for disclosure or misappropriation of trade secrets, it is not implausible that the relevant Plaintiffs could bring a claim for disclosure of private or confidential information. Second, the second offer letter does refer to the JAMS employment

arbitration rules which protects employees from excessive arbitration fees.

Any substantive unconscionability is thus minimal. Given the minimal procedural unconscionability, the Court holds that the second offer letter's arbitration provision may be enforced.

### III. CONCLUSION

The motion to compel arbitration is granted subject to severance of the offending provisions in the first offer letters. Because all individuals' claims shall be subject to arbitration, the Court shall also stay proceedings in this case pursuant to 9 U.S.C. § 3. *See* 9 U.S.C. § 3 (providing that, "[i[f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration").

This order disposes of Docket No. 22.

**IT IS SO ORDERED**.

Dated: December 11, 2019

_____
EDWARD M. CHEN
United States District Judge