NICHOLS KASTER, LLP
Matthew C. Helland, CA SBN 250451
　helland@nka.com
Daniel S. Brome, CA SBN 278915
　dbrome@nka.com
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiffs and Others
Similarly Situated

GIBSON, DUNN & CRUTCHER LLP
Jason C. Schwartz (*pro hac vice*)
　jschwartz@gibsondunn.com
Naima L. Farrell (*pro hac vice*)
　nfarrell@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Rachel S. Brass, SBN 219301
　rbrass@gibsondunn.com
Joseph A. Gorman, SBN 267553
　jgorman@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

Attorneys for Quantcast Corporation

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Tag Brown, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>Quantcast Corp.,<br><br>　　　　　　　　Defendants. | **Case No. 3:19-cv-05773**<br><br>**JOINT MOTION FOR APPROVAL OF INDIVIDUAL SETTLEMENTS; MEMORANDUM IN SUPPORT**<br><br>Date:　　　June 3, 2021<br>Time:　　　1:30 p.m.<br>Courtroom: 5, 17th Floor<br><br>Action Filed: September 13, 2019 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION .................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 1
   I.   INTRODUCTION ............................................................................................................. 1
   II.   RELEVANT PROCEDURAL HISTORY ...................................................................... 1
   III.   THE SETTLEMENT AGREEMENTS ........................................................................... 2
      A.  Payment Terms ...................................................................................................... 2
      B.  Release Terms ........................................................................................................ 3
      C.  Redacted Filing ...................................................................................................... 3
   IV.   ARGUMENT ..................................................................................................................... 4
      A.  The FLSA Settlement Is a Reasonable Compromise of a Bona Fide Dispute ................ 4
         i.  Bona fide dispute ........................................................................................ 4
         ii.  Reasonable compromise ............................................................................. 6
         iii.  Attorneys' fees and costs ........................................................................... 9
   V.   CONCLUSION ................................................................................................................ 10

## NOTICE OF MOTION AND MOTION

Please take notice that on June 3, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5, 17th Floor, of the above-captioned Court, Plaintiffs and Defendant will, and hereby do, jointly move this Court to approve the individual settlement agreement reached between Defendant and Plaintiffs.

This Motion is based on this Notice, the Memorandum of Points and Authorities, supporting evidence filed herewith, the Court's file in this matter, and such other arguments or evidence as may be presented at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Named Plaintiff and the Opt-in Plaintiffs have settled their claims against Defendant. Because these settlements include releases of claims under the Fair Labor Standards Act ("FLSA"), the Parties seek court approval of their Settlement Agreements. The Settlement Agreements provide considerable value for Plaintiffs' claims. Absent settlement, Plaintiffs would face a drawn-out path to recovery involving individual, highly contested arbitration. This Court should grant approval to the Plaintiffs' Settlement Agreements and dismiss this action with prejudice.

### II.  RELEVANT PROCEDURAL HISTORY

On September 13, 2019 Plaintiff Tag Brown filed a complaint on behalf of himself and others similarly situated, seeking unpaid overtime under the FLSA and California law, through California's unfair competition law. (ECF No. 1.) Other individuals then filed Consent Forms to join the case as Opt-in Plaintiffs.[1] (ECF Nos. 6, 19, 20, 21.) On October 24, 2019, Defendants filed a Motion to Compel Arbitration and Stay Proceedings. (ECF No. 22.) On December 11, 2019 this Court granted the Motion to Compel Arbitration and Stay the Proceedings. (ECF No. 42.)

Since that time, the case has been stayed while the Parties engaged in settlement negotiations and, when those negotiations reached impasse, Plaintiffs filed multiple arbitration demands. (*See* ECF Nos. 43-59.) On September 17, 2020, Plaintiffs Brown and Awrabi submitted

---

[1] One individual later withdrew. (ECF No. 56.)

1  individual arbitration demands with JAMS. On October 30, 2020, Plaintiffs McManus and Primer
2  submitted individual arbitration demands with JAMS.

3  The Parties subsequently resumed settlement negotiations, and ultimately reached an
4  agreement to settle the claims of Plaintiffs Brown, Awrabi, McManus, Primer, and Ransome, as
5  well as four individuals who had not previously filed consent forms in this action but have asserted
6  similar claims: Kathleen Allbaugh, Julie Hamilton, Blair Wilen, and Robert Zhornist.[2] (Allbaugh,
7  Wilen, and Zhornist have each filed individual demands for arbitration.) The Parties have finalized
8  written Settlement Agreements for these nine individuals (collectively referred to as "Plaintiffs"),
9  and now seek Court approval of these settlements.

10  **III.   THE SETTLEMENT AGREEMENTS**

11  Defendant and Plaintiffs signed Settlement Agreements resolving Plaintiffs' claims against
12  Quantcast as well as any potential claims against Plaintiffs in March 2021. Plaintiffs now seek
13  approval of the Settlement Agreements, which will be submitted by Quantcast in conjunction with
14  its request to seal.

15  **A. Payment Terms**

16  The Settlement Agreements resolve all issues between Quantcast and Plaintiffs. (Settlement
17  Agreements ¶¶ 8, 9.) The settlement amounts were the result of individualized negotiations between
18  Counsel, because Plaintiffs' claims were proceeding in individualized arbitration, not in a class or
19  collective action. In consideration of the mutual covenants and releases given by Plaintiffs and
20  Quantcast, Quantcast agrees to pay to Plaintiffs as follows:

| Plaintiff | Total Amount |
|---|---|
| Kathleen Allbaugh | ███ |
| Sam Awrabi | ███ |
| Tag Brown | ███ |
| Julie Hamilton | ███ |
| Pierce McManus | ███ |

---

28  [2] These individuals' consent forms are being filed contemporaneously.

| | |
|---|---|
| Andrea Primer | ████ |
| Jalen Ransome | ████ |
| Blair Wilen | ████ |
| Robert Zhornist | ████ |
| Total: | ████ |

The payments to Plaintiffs will be characterized as half wages, reported on a W-2, and half non-wages, reported on a 1099; Quantcast will pay the employer-side taxes on the wage (W-2) portions of the settlement amounts. (Settlement Agreements ¶ 4.) The Settlement Agreements provide for payment of attorneys' fees and costs, which were assessed on a pro rata basis according to the costs Plaintiffs' Counsel incurred in the relevant matters up to the point of settlement, and fees were one-third, based on Counsel's representation agreements with Plaintiffs. ████████ ████████████████████████████████████████ (Brome Decl. ¶ 6.)

**B. Release Terms**

The releases in the Settlement Agreements are intended to resolve all claims between Plaintiffs and Quantcast. (Settlement Agreements ¶¶ 8-9.) The releases are therefore broad and completely mutual. (Settlement Agreements ¶¶ 8-9.)

**C. Redacted Filing**

The Settlement Agreements include both confidentiality/ non-publicity clauses, and a clause permitting Quantcast to seek to seal the Agreements and portions of this settlement approval motion. (Settlement Agreements ¶¶ 15, 13, 1.) Plaintiffs do not oppose Quantcast's request to keep portions of these documents under seal. The Parties note that there is authority on both sides of the issue regarding the motion to seal.[3]

---

[3] *Cordero v. Lumenis*, 2016 WL 4529586, at **3–5 (N.D. Cal. Aug. 30, 2016); *Duran v. Hershey Co.*, 2015 WL 4945931, *1 (N.D. Cal. Aug. 10 2015); *Smith v. Golden Gate LLC*, 2015 WL 2340231, at *2 (E.D. Cal. May 13, 2015); *Luo v. Zynga Inc.*, 2013 WL 5814763, at *2 (N.D. Cal. Oct. 29, 2013); *Bernstein v. Target Stores, Inc.*, 2013 WL 5807581, at *3 (N.D. Cal. Oct. 28, 2013); *Ostrander v. Customer Eng'g Servs., LLC*, 2018 WL 1152265, at *5 (D. Colo. Mar. 5, 2018); *Stanley v. Turner Oil & Gas Props., Inc.*, 2017 WL 5068444, at *2 (S.D. Ohio July 24, 2017);

-3-

## IV. ARGUMENT

### A. The FLSA Settlement Is a Reasonable Compromise of a Bona Fide Dispute

Settlements of FLSA claims are subject to court approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982). District courts review FLSA settlements to ensure each settlement is a "fair and reasonable resolution of a bona fide dispute." *Id.* at 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Yue Zhou v. Wang's Rest.*, 2007 WL 2298046 at *1 (N.D. Cal. Aug. 8, 2007) (citing *Lynn's Food*).

#### i. Bona fide dispute

To evaluate a proposed FLSA settlement, courts often look first at the disputed issues. Here, the primary issue in dispute is Plaintiffs' status as exempt employees: there is no dispute that Plaintiffs were not paid overtime premiums, so whether Quantcast is able to show that an exemption applies will be central to all Plaintiffs' claims. Even assuming that Plaintiffs were misclassified as exempt, there are numerous disputes. The Parties dispute whether any violation was willful (which determines whether a two- or three- year statute of limitations applies under the FLSA), whether Quantcast had a good faith basis for any violations (which could preclude an award of liquidated damages), the amount of overtime hours worked, the appropriate method of calculating damages,

---

*Johnson v. Bank of Am. NA*, 2017 WL 9988653, at *2 (D. Ariz. May 30, 2017); *Smolinski v. Ruben & Michelle Enter. Inc.*, 2017 WL 835592, at *3 (E.D. Mich. Mar. 3, 2017); *Lyons v. Gerhard's Inc.,* 2015 WL 4378514, at *3 (E.D. Pa. July 16, 2015); *Fonseka v. Alfredhouse Eldercare, Inc.,* 2015 WL 3457224, at *2-3 (D. Md. May 28, 2015); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177 (S.D.N.Y. 2015); *Files v. Federated Payment Sys. USA, Inc.*, 2013 WL 1874602, at *3 (E.D.N.Y. Apr. 2, 2013); *Parker v. Encore Rehab., Inc.*, 2012 WL 6680311, at *4 (S.D. Ala. Dec. 21, 2012); *Wingrove v. D.A. Techs., Inc.*, 2011 WL 7308492, *2 (N.D. Ga. Feb. 3, 2011); *Poulin v. Gen. Dynamics Shared Res., Inc.*, 2010 WL 1655962, at *5 (W.D. Va. Apr. 23, 2010); *Prater v. Commerce Equities Mgmt. Co.*, 2008 WL 5140045, at *10 (S.D. Tex. Dec. 8, 2008); *Trinh v. JPMorgan Chase & Co.*, 2009 WL 532556, at *1 (S.D. Cal., Feb. 3, 2009); *Campanelli v. The Hershey Company*, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011); *Almodova v. City & Cty. of Honolulu*, 2010 WL 1372298 at *13 (D. Haw. Mar. 31, 2010); *King v. Wells Fargo Home Mort.*, 2009 WL 2370640, at *1 (M.D. Fla. July 30, 2009); *Freyre v. Tin Wai Hui DMD, P.A.*, 2009 WL 89283, at *1 (S.D. Fla. Jan. 13, 2009); *Goudie v. Cable Commc'ns, Inc.*, 2009 WL 88336 at *1 (D. Or. Jan. 12, 2009); *Viada v. Osaka Health Spa, Inc.*, 2006 U.S. Dist. LEXIS 84744 at *2-4 (S.D.N.Y. June 27, 2006).

and the impact of previous release agreements that some Plaintiffs signed when leaving employment.

### 1. Applicability of exemptions

Plaintiffs contend that Defendant wrongly classified them as exempt from the FLSA's overtime requirements and paid a salary plus commissions. (ECF No. 1 ¶ 26.) Defendant would likely argue that Plaintiffs were and are properly classified as exempt from overtime pay. In answering the arbitrations, Quantcast asserted the Plaintiffs were exempt, but did not specifically identify which exemption(s) it contends apply. For individuals employed in sales roles, like Plaintiffs, employers sometimes assert the administrative exemption, the retail sales and service exemption, the outside sales exemption, or some combination. Plaintiffs vigorously dispute that any of these exemptions could apply. Litigating exemption cases is highly fact-intensive, and requires a detailed analysis of the workers' job duties. Whether an exemption applies is a bona fide dispute, and supports approval.

### 2. Statute of limitations, liquidated damages, and releases

Even if Plaintiffs defeat Defendant's exemption defenses and establish liability, they must still prove damages. The FLSA provides a default two-year statute of limitations, which can be extended to three-years for willful violations. To establish a willful violation, Plaintiffs would seek discovery regarding Defendant's classification decisions and policies, to show Defendant knew that sales representatives should have received overtime. However, facts showing willfulness are often difficult to pin down, and even compelling evidence that the employer was on notice will not necessarily establish a willful violation. *See, e.g., Deluca v. Farmers*, 386 F. Supp. 3d 1235, 1261-63 (N.D. Cal. 2019) (finding fact questions precluded summary judgment on willfulness, even though employer had previously been found to have misclassified employees in the same position and had not reclassified). Relatedly, Defendant has asserted that, if it is found to be in violation, any violation was in good faith, and that liquidated damages are not available. The good faith defense to liquidated damages includes a subjective (what did the defendant subjectively believe about its payments) and objective (was that belief objectively reasonable) component. To defeat this defense, Plaintiffs would attempt to show that Defendant did not actually hold an objectively

reasonable belief that it was lawful to not pay overtime to sales representatives. Finally, as Defendant has noted, some of the Plaintiffs previously signed general releases. While Plaintiffs dispute that FLSA claims can be released as part of a general release in a severance agreement (*see, e.g., Santiago v. Amdocs, Inc.*, 2012 WL 2343626, at **1-3 (N.D. Cal. June 20, 2012)), there is a risk that one or more arbitrators could find the releases compelling.[4] These issues both present bona fide disputes and support approval.

### 3. Amount of overtime and calculation of damages

Even if Plaintiffs demonstrated they were entitled to overtime, they would have to prove the amount of overtime worked. Plaintiffs allege that they regularly work more than 40 hours in a work week. However, Quantcast may not have complete records of the hours Plaintiffs worked, and Quantcast would likely challenge the number of hours Plaintiffs assert they regularly worked. In responding to the arbitration demands, Quantcast asserts that Plaintiffs may not have consistently worked more than 40 hours per week, which would preclude any overtime damages under the FLSA in weeks with fewer than 40 hours. If the arbitrators awarded damages but reduced the number of hours credited, Plaintiffs' damages could be significantly reduced.

Quantcast would likely assert that any damages should be calculated using the "fluctuating workweek" method, which would pay overtime at a half-time rate, instead of time-and-a-half. While district courts within this circuit generally reject this method of calculating overtime in a misclassification case such as this (*see, e.g., Deluca*, 386 F. Supp. 3d at 1264-65), the Ninth Circuit has not spoken on the issue, and other circuit courts have allowed it. The fluctuating workweek method dramatically reduces damages compared to the traditional time-and-a-half rate, and in individual arbitration, there is a heighted risk that one or more Plaintiffs might recover using this method. This presents a bona fide dispute and supports approval.

### ii. Reasonable compromise

Under *Lynn's Food*, the existence of an underlying filed suit "provides some assurance of an adversarial context" for the settlement; this in turn supports a finding that a settlement is not "a

---

[4] For those Plaintiffs who worked in California, the releases would likely be effective to bar their state law claims.

-6-

waiver of statutory rights brought about by an employer's overreaching." 679 F.2d at 1354. Here, Plaintiffs reached the proposed settlement agreement with Quantcast in the highly adversarial context of a lawsuit and multiple arbitrations. The dispute over Plaintiffs' overtime claims has been heavily contested from the outset, with Defendant and Plaintiffs aggressively pursuing their respective positions. Given the contested, complex nature of the litigation in this action as well as the related arbitrations, the results obtained for the settling Plaintiffs represent a reasonable compromise, favoring approval.

Given the number of disputed issues at hand, Plaintiffs believe the settlements reflect a very good value for their claims. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id*. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Plaintiffs have been represented by Plaintiffs' Counsel in all relevant matters since each Plaintiff joined the case. Through Counsel, Plaintiffs engaged in direct negotiations after the Court's order compelling arbitration. When those negotiations reached impasse, Plaintiffs' Counsel prepared and filed multiple arbitration demands. Plaintiffs' Counsel then conducted further negotiations, leading to the settlements here, and negotiated the form and substance of the Settlement Agreements. Plaintiffs' Counsel advised Plaintiffs as to the form and implications of the proposed Settlement Agreements. Plaintiffs' representation by capable counsel also weighs in favor of approval. *Lynn's Food Stores*, 679 F.2d at 1354. Plaintiffs' Counsel here has considerable experience litigating FLSA collective actions, and the Parties have engaged in sufficient discovery to make accurate assessments of the potential liability. (Brome Decl. ¶ 4.)

The settlement amount here also weighs in favor of approval because it is "fair and

1 reasonable under the circumstances presented." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.
2 Supp. 3d 1164, 1174 (S.D. Cal. 2016). Here, Plaintiffs settled for ███████████████
3 ████████████████████████████████████████████████████████████████████
4 ████████████████████████████████████████████████████████████████████
5 ████████████████████████████████████████████████████████████████████
6 ████████████████████████████████████████████████████████████████████
7 ████ (Brome Decl. ¶ 3).

8 Plaintiffs argue that a three-year (rather than a two year) statute of limitations should apply
9 to the FLSA claims, alleging Defendants willfully misclassified Plaintiffs as exempt. *See* 29 U.S.C.
10 § 255(a). Plaintiffs also allege they regularly worked overtime, but Defendant disputes the amount
11 and frequency of overtime work. Defendant also argues that liquidated damages are not appropriate
12 because, if Plaintiffs were misclassified, any misclassification was in good faith. *See* 29 U.S.C.
13 216(b). This settlement is well within the range of reasonableness. *See Selk*, 159 F. Supp. at 1175
14 (finding settlement fund representing "between 26% to 50% of the best possible recovery". . . "to
15 be in the range of reasonableness for wage and hour actions."); *Bellinghausen v. Tractor Supply*
16 *Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving wage and hour class settlement where
17 the settlement fund represented between 9% and 27% of the total potential recovery); *Ma v.*
18 *Covidien Holding*, 2014 WL 360196, *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of
19 the total value of the action [was] 'within the range of reasonableness'").

### 1. Mutual Release

21 The fact that Defendant is releasing all claims against Plaintiffs weighs in favor of
22 settlement approval. This mutual general release ensures that Plaintiffs will not be forced to undergo
23 further litigation. While courts often prefer FLSA settlements to contain narrow releases, "[t]his is
24 not to say that employees may never agree to ancillary terms when settling FLSA claims; but the
25 court should closely scrutinize the fairness of such 'side deals' because they do not directly relate
26 to any bona fide dispute over FLSA coverage or wages due." *Hogan v. Allstate Beverage Co.*, 821
27 F.Supp.2d 1274, 1282 (M.D. Ala. 2011). Here, multiple Plaintiffs faced counterclaims in their
28 arbitrations. (Brome Decl. ¶ 4.) The release that Defendant is providing ensures that Plaintiffs will

not face any future risk from those claims. Further, because the Plaintiffs have all individually signed their agreements, they have had an opportunity to consult with Plaintiffs' Counsel about the scope of their release.

Under these circumstances, the Court should approve the broad, mutual release. In *Cordero v. Lumenis Inc.*, the Northern District approved a settlement containing a mutual general release under similar circumstances. 2016 WL 4529586 at *3. In *Cordero*, the plaintiffs also faced potential liability via a countersuit for alleged breach of a severance agreement. *Id.* The Court found that where, as here, plaintiffs "demonstrated that they were advised about what they were releasing and that they considered a mutual release to be adequate consideration for agreeing to a general release," the settlement including the mutual release constituted a "fair and reasonable resolution." *Id.* Here, Plaintiffs have been threatened with counter-litigation which makes a mutual release valuable; Plaintiffs were also advised by Plaintiffs' Counsel as to the implications of their negotiated mutual releases. The general mutual releases in Plaintiffs' Settlement Agreements should not bar approval, because they guarantee valuable protection for Plaintiffs: relief from the risk of future litigation or arbitration.

### iii. Attorneys' fees and costs

Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Settlement Agreements here provide for payment of ▮▮▮▮▮▮▮▮. The Court should approve payment of attorneys' fees as provided in the agreements, because they are "privately negotiated settlement[s]." *Campanelli v. Hershey Co.*, 2011 WL 3583597, *1 (N.D. Cal. May 4, 2011). Unlike a class-wide settlement, Plaintiffs personally signed off on their individualized Settlement Agreements containing the attorneys' fee and cost amounts. *See Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (approving FLSA settlement including 33.3% attorneys' fee award plus litigation costs where "each plaintiff has approved this amount"). Additionally, because this is not a class-wide settlement, the Ninth Circuit's 25% class action benchmark does not apply.

Plaintiffs' counsel has represented Plaintiffs on a contingency basis. (Brome Decl. ¶ 5.) As

a result, Plaintiffs' Counsel has not yet received compensation for their time spent litigating on behalf of the Plaintiffs nor have they received reimbursement for their out-of-pocket costs during litigation. (*Id.*) Plaintiffs' Counsel can provide additional briefing regarding fees and costs should the Court require it.

## V. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court approve the settlement, including the requested attorneys' fees and costs, and that, upon settlement approval, the Court dismiss with prejudice Plaintiffs from this action.

Dated: April 29, 2021          **NICHOLS KASTER, LLP**

By:   s/Daniel S. Brome
      Daniel S. Brome
      Attorneys for Plaintiff and Others Similarly Situated

**GIBSON, DUNN & CRUTCHER LLP**

By:   s/Rachel S. Brass
      Rachel S. Brass
      Attorneys for Quantcast Corporation